# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| LIONEL BRISCO<br>3309 Milton Court, Apt. 2<br>Cincinnati, Ohio 45229, | : | Case No. 1:15-cv-00732 |
| | : | Judge |
| Plaintiff, | : | Magistrate |
| vs. | : | |
| KLOSTERMAN BAKING CO.<br>c/o Statutory Agent<br>CT Corporation System<br>1300 East Ninth Street<br>Cleveland, Ohio 44114 | :<br><br>:<br><br>: | **COMPLAINT AND<br>JURY DEMAND** |
| and | : | |
| BAKERY, CONFECTIONERY AND<br>TOBACCO WORKERS AND GRAIN<br>MILLERS INTERNATIONAL<br>UNION LOCAL #57 AFL-CIO-CLC<br>OF COLUMBUS, OHIO AND<br>VICINITY,<br>555 East Rich Street<br>Columbus, Ohio 43215, | :<br><br>:<br><br>:<br><br>:<br>: | |
| Defendants. | | |

The plaintiff, through counsel and for his complaint, states the following:

## Nature of Action

1. The plaintiff Lionel Brisco brings this action against his former employer, Klosterman Baking Co., for breach of a collective bargaining agreement, and against his union, known as Baker's Union Local #57, for breach of its duty of fair representation.

## Parties

2. The plaintiff Lionel Brisco ("Brisco") is a citizen and resident of Cincinnati, within the Southern District of Ohio, Western Division.

3. Brisco was formerly employed by the defendant Klosterman Baking Co. ("Klosterman" or "the Company"), which is an Ohio corporation having its principal place of business in Cincinnati, within the Southern District of Ohio, Western Division.

4. Brisco is a member of the defendant Bakery, Confectionery, and Tobacco Workers and Grain Millers International Union Local # 57 AFL-CIO-CLC of Columbus, Ohio and Vicinity ("the Union"). The Union represents workers and does business within the Southern District of Ohio, Western Division.

## Jurisdiction and Venue

5. This action is a "hybrid" § 301/duty of fair representation claim brought under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, *et seq*.

6. This Court has federal question jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 29 U.S.C. § 185.

7. Venue is proper in this Court under the venue provisions of the LMRA, 29 U.S.C. § 185(c)(2) and 28 U.S.C. § 1391.

## Summary of Essential Facts

8. Brisco was employed by Klosterman and was a member of and was represented by the Union.

9. Klosterman and the Union entered into a collective bargaining agreement, which was in effect at all times material to this complaint. A true and correct copy of that agreement is attached as Exhibit A.

10. The collective bargaining agreement allows Klosterman to terminate employees for cause. [See, Exh. A, Article 7. Seniority, ¶ N, sub-¶ B].

11. The collective bargaining agreement has grievance and arbitration procedures that

2

may be invoked if any controversy arises between employees and the Company. [Exh. A, Article 15. Grievances and Arbitration].

12. Only the Union and the Company have the right and power to invoke the grievance and arbitration procedures. Brisco has no right to invoke the grievance and arbitration procedures himself. [Exh. A, Article 15, ¶ E].

13. The collective bargaining agreement states that if arbitration is not demanded within a specified time period (within 30 days from the Company's written answer to a grievance not resolved by informal discussion) then the grievance matter is considered to be dropped. [Exh. A, Article 15, ¶ D].

14. The Union does not have the right or ability under the collective bargaining agreement to reinstate any grievance matter that has been dropped by its failure to timely demand arbitrations. [See Exh. A].

15. Klosterman has an attendance and tardiness policy that assigns points for each day (1 point) or half-day (½ point) that an employee misses work without excuse or authorization. A copy of Klosterman's attendance and tardiness policy, with handwritten markings by Brisco, is attached hereto as Exhibit B.

16. An employee who accumulates 8 or more points within a 12 month period is subject to termination. [Exh. B].

17. Klosterman is not permitted to assign points to an employee who has to leave his shift due to an on-the-job injury, or who is off work with a doctor's excuse because of that injury. [Exh. B].

18. Brisco was working third shift in the early morning hours of November 5, 2014, when he slipped and wrenched his back, causing him to suffer a back injury.

19.     Brisco reported his injury to his supervisor on November 5, 2014, in accordance with company policy.

20.     After he finished working his shift on November 5, 2014,, Brisco went to Good Samaritan Hospital Emergency Room to be examined for his injuries.

21.     Good Samaritan Hospital gave Brisco a note releasing him from work duties until November 8, 2015.

22.     Nevertheless, Brisco reported for his shift that evening to attempt to perform his work duties despite his injuries.

23.     By approximately 2:30 a.m. the morning of November 6, 2014, however, Brisco's back injury was causing him so much pain and discomfort that he told his supervisor he could no longer work and had to leave.

24.     The supervisor improperly assigned ½ point to Brisco for leaving work during his shift.

25.     Brisco went back to Good Samaritan Hospital on November 6, 2014, and the doctor released Brisco from work duties, with "[r]eturn to work to be determined by occupational health.  Off work until that date."  The Hospital gave Brisco an appointment to return on November 11, 2014, to be examined by physicians in occupational health.

26.     On November 11, 2014, Brisco was examined by occupational health physicians at Good Samaritan, who released Brisco from work duties through November 18, 2014.

27.     Good Samaritan Hospital and its occupational health department are the medical providers chosen by Klosterman to evaluate employee work-related injuries that give rise to worker's compensation claims.

28.     Because Good Samaritan is the Company's chosen medical examiner, Brisco sought

his own medical examination at Christ Hospital on November 11, 2014, and Christ Hospital also released Brisco from work duties due to his injuries.

29. Brisco has continued to receive medical treatment for his injuries, and has been unable to work since his last unsuccessful attempt to do so on November 6, 2014.

30. Brisco has recently been declared permanently and partially disabled by the Ohio Bureau of Workers Compensation.

31. Despite being declared unfit for work and being released from work duties by doctors of Klosterman's own choosing, Klosterman assigned Brisco another point for missing work on November 12, 2014.

32. The 1-½ points that Klosterman assigned to Brisco for leaving work early on November 6, 2014, and not reporting for work on November 12, 2014, put Brisco at or over the 8 point limit for the preceding 12 month period.

33. On November 13, 2014, Klosterman called Brisco in for a meeting, and informed him of the Company's intent to dismiss him as discipline for accumulating 8 points within 12 months under the attendance and tardiness policy.

34. Because Brisco left work early on November 6, 2014 due to a work-related injury, and missed work on November 12, 2014 because he was still injured and medically unfit for duty on that date, his early departure on November 6 and absence on November 12 should have been considered excused absences for which no points could be assessed.

35. Brisco requested his Union Steward to file a grievance on his behalf, and believes that the Union filed a grievance on his behalf.

36. Brisco has never been provided a copy of any grievance.

37. Brisco does not know whether Klosterman submitted any written response to his

grievance.

38. Neither the Union nor the Company has ever provided Brisco with a copy of any written Company response to his grievance.

39. Neither the Union nor the Company initiated any contact with Brisco after November 13, 2014.

40. Brisco, however, would periodically contact the Union to determine the status of his employment and his grievance.

41. On April 20, 2014, Brisco contacted the Union and was advised that negotiations with the Company had been unsuccessful, and that his dismissal from employment had become final.

42. Brisco requested the Union to demand arbitration on his behalf.

43. The Union representative told Brisco that the Union was low on funds, and did not think that arbitration would be successful.

44. The Union representative did not, however, ever tell Brisco orally or in writing that the Union would not file for arbitration on his behalf.

45. Brisco does not know whether the Union ever actually demanded arbitration.

46. Brisco has never received any written or definite notice from the Union or Company that arbitration has been demanded, dropped, dismissed, held, or lost.

47. Under the terms of the collective bargaining agreement, all discharges from employment must be scheduled and heard in arbitration within 180 days from the date of discharge. [Exh. A., Article 15, ¶ F].

48. Under the terms of the collective bargaining agreement, arbitration should have been heard within 180 days from April 20, 2015, or by October 17, 2015. [See, *Id*.].

49. Brisco does not believe that any arbitration has actually taken place.

## Count One - Breach of Duty of Fair Representation by Union

50. Brisco incorporates each of the foregoing allegations as if fully restated herein.

51. The Union owes Brisco the duty of fair representation.

52. The Union breached that duty of fair representation by failing to challenge Klosterman's improper discharge of Brisco, and by failing to process Brisco's grievance through the grievance, discussion, and arbitration channels provided under the collective bargaining agreement.

53. Had the Union done so, Brisco's discharge should have been overturned, because the Brisco missed work due to an on-the-job injury, for which no points could be assessed.

54. Although Brisco has now been declared permanently and partially disabled, and would not have been able to return to work anyway, his discharge rendered him ineligible for disability and other benefits to which he would have been entitled as an employee.

55. Once the Union missed the deadline for demanding arbitration, appeal through the Union internal grievance procedures would have been futile, as the Union has no power to reinstate Brisco's grievance or his status and position as an employee.

56. Brisco has therefore been damaged by the Union's breach of its duty of fair representation in an amount to be determined at trial, but in excess of $25,000.00.

## Count Two - Breach of Collective Bargaining Agreement by Klosterman

57. Brisco incorporates each of the foregoing allegations as if fully restated herein.

58. Klosterman was not allowed to terminate Brisco's employment, except for cause, under the terms of the collective bargaining agreement.

59. Klosterman was not allowed to assign points to Brisco for leaving work early or

missing work due to an on-the-job injury.

60.     Klosterman improperly assigned points to Brisco for leaving work early on November 6, 2014, and for missing work on November 12, 2015, contrary to Klosterman's attendance and tardiness policy.

61.     Klosterman improperly terminated Brisco's employment because the points Klosterman improperly assigned to Brisco for leaving work early on November 6, 2014, and missing work on November 12, 2015, put him over the 8 points in 12 months limit.

62.     Klosterman thus terminated Brisco's employment without cause, and in breach of the collective bargaining agreement.

63.     Although Brisco has now been declared permanently and partially disabled, and would not have been able to return to work anyway, his discharge rendered him ineligible for disability and other benefits to which he would have been entitled as an employee.

64.     Brisco has therefore been damaged by Klosterman's breach of the collective bargaining agreement in an amount to be determined at trial, but in excess of $25,000.00.

## **Prayer for Relief**

WHEREFORE, the plaintiff demands judgment against the defendants, jointly and severally, as follows:

    A.     Compensatory damages in an amount to be determined at trial, but at least $25,000.00;

    B.     Reinstatement to employment with all rights and benefits available to an employee disabled due to an on-the-job injury;

    C.     Attorney's fees;

    D.     Costs of this action;

E. Any and all other legal and equitable relief to which the plaintiff may be entitled.

## Jury Demand

The plaintiff hereby demands a jury trial upon all issues in this case.

Respectfully submitted,

*/s/ Kenneth G. Hawley*
Kenneth G. Hawley (0031772)
Attorney for Plaintiff Lionel Brisco
Hawley Law Co., LPA
810 Sycamore Street, 5th Floor
Cincinnati, Ohio 45202
Tel: (513) 338-5640
Fax: (513) 579-8703
ken@hawleylawco.com